**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **STATUS SOLUTIONS LLC** | : |
| 999 County Line Rd W, Ste A | : |
| Westerville, Ohio 43082 | : |
| | : |
|       Plaintiff, | : |
| | : |
|   -vs- | : |
| | : |
| **COMPLETE CARE AT BRICK, LLC** | : |
| 415 Jack Martin Blvd. | : |
| Brick, NJ 08724 | : |
| | : |
| C/O Corporation Service Company | : |
| 100 Charles Ewing Blvd. | : |
| Ewing, NJ 08628 | : |
| | : |
| **COMPLETE CARE AT OCEAN** | : |
| **GROVE, LLC** | : |
| 160 S. Main Street | : |
| Ocean Grove, NJ 07756 | :     **JURY DEMAND** |
| | :     **ENDORSED HEREON** |
| C/O Corporation Service Company | : |
| 100 Charles Ewing Blvd. | : |
| Ewing, NJ 08628 | :     Case No.2:25-cv-144 |
| | : |
| **COMPLETE CARE AT** | : |
| **SHREWSBURY, LLC** | : |
| 89 Avenue at the Commons | : |
| Shrewsbury, NJ 07702 | : |
| | : |
| C/O Corporation Service Company | : |
| 100 Charles Ewing Blvd. | : |
| Ewing, NJ 08628 | : |
| | : |
| **COMPLETE CARE AT WALL, LLC** | : |
| 1725 Meridian Trail, | : |
| Wall Township, NJ 07719 | : |
| | : |
| C/O Corporation Service Company | : |
| 100 Charles Ewing Blvd. | : |
| Ewing, NJ 08628 | : |
| | : |

**JNL TECHNOLOGIES, INC.**                              :
W1205 Industrial Dr.                                    :
Ixonia, WI 53036-9439                                   :
                                                        :
C/O James P. Gleason                                    :
W1205 Industrial Dr.                                    :
Ixonia, WI 53036-9439                                   :
                                                        :
                       Defendants.                      :

## COMPLAINT

Plaintiff Status Solutions LLC ("Status Solutions" or "Plaintiff"), by and through its undersigned counsel, files this Complaint against Defendants Complete Care at Brick, LLC ("Brick"), Complete Care at Ocean Grove, LLC ("Ocean Grove"), Complete Care at Shrewsbuy, LLC ("Shrewsbury"), Complete Care at Wall, LLC ("Wall") (all Complete Care Defendants, collectively, the "Complete Care Defendants") and JNL Technologies, Inc. ("JNL") (together with the Complete Care Defendants, the "Defendants") (Plaintiff and Defendants, collectively, the  "Parties").

## NATURE OF THE ACTION

1.      Status Solutions is a software solutions company specializing in technology and software solutions and services for companies in the acute care, government, hospitality, manufacturing and distribution, and senior living markets.

2.      Among other products, Status Solutions produces and licenses a unique software program called Situational Awareness and Response Assistant ("SARA"), which is an integrated alarm management and mass notification emergency call system, along with numerous associated health and safety products.

3.      On information and belief, each of the Complete Care Defendants is a provider of short-term rehabilitation care and long-term care.

2

4.     Each of the Complete Care Defendants contracted with Status Solutions to license the SARA software for use at their respective facilities.

5.     Through these license agreements, the Complete Care Defendants were permitted to use the Software for a set time period and subject to restrictions on the Complete Care Defendants' rights to copy, export, modify, or otherwise distribute SARA information. The Complete Care Defendants agreed to pay an annual license fee in exchange for access to the SARA, and further agreed that the license agreements would renew annually unless timely canceled in writing.

6.     Contrary to these unambiguous commitments, the Complete Care Defendants ceased paying Status Solutions' invoices and refused to pay past-due funds to Status Solutions despite Status Solutions' repeated attempts to collect these funds.

7.     What's more, the Complete Care Defendants continued to access the SARA software and its associated intellectual property without authorization, even after purportedly terminating the license agreements. Each of the Complete Care Defendants went so far as to export proprietary information from the SARA software system, thereby breaching the EULA and comprising Status Solutions' intellectual property.

8.     On information and belief, Defendant JNL facilitated these exports in an apparent effort to poach the Complete Care Defendants' business from Status Solutions and to save on start-up costs that JNL would otherwise incur in connection with establishing operations at each of the Complete Care Defendants' facilities.

9.     These unlawful activities constitute additional breaches of the applicable license agreements and tortious interference by JNL, among other claims.

10.     Status Solutions has demanded that the Complete Care Defendants make payment of all past-due invoices. Nevertheless, the Complete Care Defendants have steadfastly refused to pay them in full. Accordingly, Status Solutions is left with no choice but to seek relief from this Court.

11.     By this Complaint, Status Solutions requests that the Court award damages resulting from Defendants' unlawful activities, including recovery of Status Solutions' reasonable attorneys' fees and costs incurred to redress this harmful conduct.

## THE PARTIES

12.     Plaintiff Status Solutions is a limited liability company originally formed under the laws of Virginia and currently registered as an Ohio domestic limited liability company with its principal place of business at 999 County Line Road W, Suite A, Westerville, Ohio 43082.

13.     Upon information and belief, Defendant Brick is a New Jersey limited liability company located at 415 Jack Martin Boulevard, Brick, New Jersey 08724.

14.     Upon information and belief, Defendant Ocean Grove is a New Jersey limited liability company located at 160 S Main St, Ocean Grove, New Jersey 07756.

15.     Upon information and belief, Defendant Shrewsbury is a New Jersey limited liability company located at 89 Avenue at the Commons, Shrewsbury, New Jersey 07702.

16.     Upon information and belief, Defendant Wall is a New Jersey limited liability company located at 1725 Meridian Trail, Wall Township, New Jersey 07719.

17.     Upon information and belief, Defendant JNL is a Wisconsin corporation located at W1205 Industrial Drive, Ixonia, Wisconsin 53036-9439.

## JURISDICTION AND VENUE

18.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. There is complete diversity between the Parties since Plaintiff is a citizen of

Ohio for diversity purposes and each of the Complete Care Defendants is a citizen of New Jersey while JNL is a citizen of Wisconsin, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

19.     This Court has supplemental jurisdiction over Status Solutions' state-law causes of action pursuant to 28 U.S.C. § 1367.

20.     The Court has personal jurisdiction over each of the Complete Care Defendants pursuant to Section V, Paragraph (9)(f) of the Innovation Program Software License Agreement, which each of the Complete Care Defendants signed and which are identical in all material respects unless otherwise indicated. True and accurate copies of each Innovation Agreement are attached hereto as **Exhibit 1** (Brick), **Exhibit 2** (Ocean City), **Exhibit 3** (Shrewsbury) and **Exhibit 4** (Wall) (collectively, the "Innovation Agreements").

21.     The Court has personal jurisdiction over JNL pursuant to Ohio Revised Code § 2307.382(A)(4) as Status Solutions suffered an injury in the state of Ohio as alleged herein, and JNL regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the state of Ohio. Furthermore, jurisdiction is proper pursuant to Ohio Revised Code § 2307.382(A)(6) because JNL caused injury to Status Solutions in the state of Ohio as alleged herein through JNL's act(s) outside this state committed with the purpose of injuring Status Solutions, which JNL might reasonably have expected would injure Status Solutions in the state of Ohio.

22.     Venue is proper in this Court under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this district. Furthermore, the EULA sets venue in this Court. (Innovation Agreements, at Section V, Paragraph (9)(f)).

## FACTUAL ALLEGATIONS

23.     Each of the Complete Care Defendants signed an Innovation Agreement with Status Solutions, through which Status Solutions provided each of the Complete Care Defendants with a license to access the SARA software at their respective care facility locations.

24.     The terms of each Innovation Agreement are the same in all material respects.

25.     Additionally, each of the Complete Care Defendants signed an End User License Agreement applicable to the use of the SARA software. The 2022 and 2024 versions of these agreements are attached hereto as **Exhibits 5** and **6**, respectively (collectively, the "License Agreements"). The Innovation Agreements and License Agreements are referred to collectively as the "EULA."

I.     **The EULA Terms Clearly And Unambiguously Require The Complete Care Defendants To Pay An Annual Fee For The SARA Software, Subject To Automatic Renewal.**

26.     Through the Innovation Agreements, the Complete Care Defendants contracted to license the SARA system.

27.     In exchange for the license and associated services, each of the Complete Care Defendants agreed to pay an annual fee to Status Solutions subject to automatic renewal each year absent advance notice of termination. (Innovation Agreement, at pp. 1–2).

28.     Each of the Complete Care Defendants, as the Customer, agreed to pay the "Price" of $18,000 for access to SARA for the Initial Term of twelve months, with an automatic annual renewal for successive one-year terms "unless either party provides the other party with written notice of nonrenewal at least 60 days before the end of the then-current term." (Innovation Agreement, at p. 1).

29.     Payment is due on the Effective Date. (*Id.*, at p. 1, and Section V, ¶ 3(a)). In the event the Customer is late in making a payment to Status Solutions, such "[l]ate payments will be

assessed a penalty of 1.5% monthly on the unpaid balance." (*Id.*, at p. 2; *see also id.*, at Section V, ¶ 3(a)(i) ("Licensor may charge interest on the past due amount at the rate of 1.5% per month calculated daily and compounded monthly or, if lower, the highest rate permitted.")).

30.     The Innovation Agreement further provides that the Customer "shall reimburse [Status Solutions] for all reasonable costs incurred by [Status Solutions] in collecting any late payments or interest, including attorneys' fees, court costs, and collection agency fees." (Innovation Agreement, at Section V, ¶ 3(a)(ii)).

31.     In the event the Customer breaches any of its obligations under the Innovation Agreement, Section V, Paragraph 9 provides Status Solutions the right to terminate the Innovation Agreement. Termination by Status Solutions does not absolve the Customer of its responsibility to "pay all fees that may have become due before such expiration or termination, or entitle [the Complete Care Defendants] to any refund. (Innovation Agreement, at Section V, ¶ 9).

## II.     **The Complete Care Defendants Were Not Permitted To Share Access To The SARA Software With Any Third Party.**

32.     In addition to these monetary terms, the Innovation Agreement makes clear that the Customer – in this case, the Complete Care Defendants – assumes only limited rights to the SARA software, and that Status Solutions "owns all right, title, and interest, including all intellectual property rights, in and to the Software and Documentation." (Innovation Agreement, at Section V, ¶ 5).

33.     Each party to the Innovation Agreement must keep confidential the other party's "Confidential Information," which is defined to mean:

> information concerning a Party's business affairs, products, confidential intellectual property, trade secrets, third-party confidential information, and other sensitive or proprietary information, whether marked, designated, or otherwise identified as "confidential" **or which should, from its nature and the circumstances of disclosure, be reasonably understood to be confidential,**

**including information about patients, residents, and information subject to HIPAA.**

(Innovation Agreement, at Section V, ¶ 4) (emphasis in original).

34.　　While the Customer takes no ownership rights in the SARA software or any of Status Solutions' intellectual property through the Innovation Agreement, the Customer is nevertheless responsible for "all uses" made of the SARA software and associated Documentation "resulting from access provided by [Status Solutions], directly or indirectly, whether such access or use is permitted by or in violation of [the Innovation Agreement]." (Innovation Agreement, at Section V, ¶ 2).

35.　　In addition to the restrictions set forth in the Innovation Agreement, each of the Complete Care Defendants agreed to the terms of the License Agreement, which further confirm that the Customer may not share access to the SARA system with third parties.

36.　　Among its provisions, at all times relevant to this Complaint, the License Agreement provided as follows:

> **You agree and acknowledge that the Software is owned by [Status Solutions]** (and/or where applicable, its suppliers), and accordingly **You have no right**, and You acknowledge that **no such right is granted hereby**, **to use**, make, sublicense, modify, **transfer**, rent, lease, sell, display, distribute **or copy originals or copies of the Software, or to permit or authorize any other party to do so**, except as may be specifically permitted by the express terms of this EULA.

(License Agreement, at ¶ 3) (emphasis added).[1]

37.　　The License Agreement thus prohibits a Software licensee from sharing the Software, including any associated data, with a third party. (*Id.*). The License Agreement also prohibits a licensee from permitting or authorizing a third party to access the Software. (*Id.*).

---

[1] Status Solutions updated the standard terms of the License Agreement, including this provision, in 2024. Shrewsbury and Brick signed the 2024 version of the EULA on May 7, 2024 and July 11, 2024, respectively.

38.     The Complete Care Defendants most recently signed the License Agreement on the following dates:

    a.  Brick – July 11, 2024;

    b.  Ocean Grove – March 3, 2022, with automatic renewal subject to the same terms in 2023;

    c.  Shrewsbury – May 7, 2024; and

    d.  Wall – September 19, 2022, with automatic renewal subject to the same terms in 2023.

39.     Having signed the License Agreement, the Complete Care Defendants were obligated to comply with the License Agreement's terms, including but not limited to the restrictions set forth at Paragraph 3.

**III.    JNL Tortiously Interferes With Status Solutions' Contract Relationships, Procuring Complete Care's Breach of the EULA.**

40.     While attempting to recover the license renewal fees it is owed as described *infra*, Status Solutions discovered evidence that a terminated reseller partner had interfered with its contract relationships with the Complete Care Defendants and, on information and belief, had facilitated Complete Care's export and potential transfer of sensitive and proprietary SARA information.

41.     Defendant JNL is a former reseller of Status Solutions, and that relationship was terminated in January of 2017. According to JNL's website, it sells a family of products called Quantum that provide a variety of services for residential care facilities, including patient and staff monitoring solutions.

42.     On information and belief, as a former reseller employing a former Status Solutions employee, JNL would be familiar with the type of license agreements that software providers like

Status Solutions utilize to grant limited access rights to licensees like the Complete Care Defendants.

43.     Despite JNL's knowledge of these contracts, on information and belief, JNL began a business relationship with some or all of the Complete Care Defendants in 2023 or early 2024 while each EULA was still in effect.

44.     As a result of this new relationship with JNL, in January 2024, three of the four Complete Care Defendants performed an export of SARA software data. Such action would not serve any purpose except to remove data from the SARA system so that it could be shared with a third party.

45.     These exports were performed on or about the following dates:

      a.   Ocean Grove – January 17, 2024;

      b.   Shrewsbury – January 18, 2024; and

      c.   Wall – January 17, 2024.

46.     At the time, Status Solutions did not know who was involved in facilitating these exports but suspected that a competitor or other unauthorized third party had worked with the Complete Care Defendants to perform these exports in violation of the EULA.

47.     Apparently confirming Status Solutions' suspicion, a JNL representative called Status Solutions' customer support on or about April 17, 2024, regarding the SARA system in use at the Complete Care location at Brick. During this call, a technician who identified himself as "Eric" represented that he had been engaged by JNL to replace the Brick SARA system with another software product.

48.     On information and belief, Brick then performed a complete export of SARA system data on or about April 17, 2024, thereby providing JNL with the same information that had

been exported previously from the other three Complete Care locations.

49.     On information and belief, JNL encouraged, directed, or otherwise cooperated with the Complete Care Defendants – and in the case of Brick, directly participated – to complete these exports so that JNL could gain access to Status Solutions' proprietary information.

50.     On information and belief, the Complete Care Defendants shared the exported information with JNL, providing a direct benefit to JNL. The exported files would have demonstrated to JNL, *inter alia*, what hardware Status Solutions used to operate the SARA system at each location, where this hardware was positioned, and other related information that would be useful as JNL worked to replace the SARA system with its own competing technology.

51.     Such information, improperly obtained in violation of the EULA, would save JNL considerable time and expense establishing its own software operation at each of the Complete Care Defendants' facilities.

52.     On information and belief, JNL's contributions to these activities are part of a broader scheme to, *inter alia*, poach Status Solutions' customers, improperly obtain proprietary information about the SARA system, and ultimately obtain an improper advantage in the market for these competing technologies.

53.     Each of the Complete Care Defendants' actions in making, authorizing, or otherwise facilitating these exports breached the EULA.

54.     JNL's participation in the Complete Care Defendants' exports constitutes tortious interference with the EULA, among other violations of law, and has injured Status Solutions.

55.     Status Solutions is still investigating the scope of JNL's interference with these, and potentially other, contract and business relationships. Status Solutions reserves the right to amend this Complaint to add any further causes of action as may be available now or in the future.

## IV.  The Complete Care Defendants Failed To Pay The Innovation Agreement Renewal Payments When Due And Have Not Done So To Date.

56.     Despite the clear and unambiguous terms set forth in the Innovation Agreements, and in addition to the EULA breaches resulting from the Complete Care Defendants' exports of proprietary SARA information, the Complete Care Defendants have also failed to make renewal payments due to Status Solutions. The facts specific to each of the Complete Care Defendants' conduct are set forth below.

### A.     Defendant Brick Failed To Pay The Contract Price Upon Renewal.

57.     The Brick Innovation Agreement's Effective Date is May 18, 2023, with the Subscription Period running from April 1, 2023–March 31, 2024. (Ex. 1, at p. 1).

58.     Though Brick timely paid the $18,000 Price at the outset of the Initial Term, it subsequently failed to make any additional payments when the Innovation Agreement renewed in 2024.

59.     Brick's deadline to terminate the Innovation Agreement elapsed on January 31, 2024. (Ex. 1, at p. 1). Status Solutions did not receive a notice of nonrenewal on or before January 31, 2024, and consequently, the Brick Innovation Agreements renewed. (Ex. 1, at Section V, ¶ 3(a)).

60.     Accordingly, Status Solutions sent Brick an invoice dated February 22, 2024, requesting payment for the $18,000 contract price due. A true and accurate copy of Invoice No. INV23877 is attached hereto as **Exhibit 7**.

61.     Brick failed to remit payment before the new Subscription Period began on April 1, 2024. In an effort to work in good faith with its customer, Status Solutions did not immediately suspend Brick's access to SARA and instead, attempted to obtain payment without disrupting Brick's access to SARA, a tool that was critical for Brick's operations.

62.     On April 12, 2024, Status Solutions sent a Notice of Cancellation for Non-Payment to Brick, a true and accurate copy of which is attached hereto as **Exhibit 8**. Through this Notice, Status Solutions informed Brick that, "although multiple attempts have been made to remit payment on the outstanding invoice(s) owed to Status Solutions, failure to do so in a timely manner has left us with no alternative action other than to cease services." (*Id.*). Status Solutions further alerted Brick that failure to make payment within 48 hours would result in Status Solutions ceasing a variety of services listed therein. (*Id.*)  Brick did not remit payment within 48 hours.

63.     Status Solutions made numerous requests for Brick to pay the $18,000 balance due, including additional correspondence on April 16, 2024, attached as **Exhibit 9**. Despite these repeated requests, Brick failed to make the requested payment.

64.     On April 18, 2024, Status Solutions reiterated Brick's obligation to pay the $18,000 contract renewal price through email correspondence, a true and accurate copy of which is attached hereto as **Exhibit 10**.

65.     Brick still did not make the payment due.

66.     Status Solutions, through its counsel, sent a formal demand for payment on June 17, 2024, a true and accurate copy of which is attached hereto as **Exhibit 11**. As set forth therein, Status Solutions directed Brick to make the full payment of $18,000 immediately, which Brick did not do.

67.     Brick has not paid the full balance due and owing to date.

**B.  Defendant Ocean Grove's Failure To Pay The Contract Price.**

68.     The Ocean Grove Innovation Agreement's Effective Date is May 18, 2023, with the Subscription Period running from June 1, 2023–May 31, 2024. (Ex. 2, at p. 1).

69.     Though Ocean Grove timely paid the $18,000 Price at the outset of the Initial Term, it subsequently failed to make any additional payments when the EULA renewed in 2024.

13

70.     Ocean Grove's deadline to terminate the EULA elapsed on March 31, 2024. (Ex. 2, at p. 1). Status Solutions did not receive a notice of nonrenewal on or before March 31, 2024, and consequently, the Ocean Grove EULA renewed. (Ex. 2, Section V, ¶ 3(a)).

71.     Accordingly, Status Solutions sent Ocean Grove an invoice dated April 6, 2024, requesting payment for the $18,000 contract price due. A true and accurate copy of Invoice No. INV24256 is attached hereto as **Exhibit 12**.

72.     Ocean Grove failed to remit payment before the new Subscription Period began on June 1, 2024. In an effort to work in good faith with its customer, Status Solutions did not immediately suspend Ocean Grove's access to SARA and instead, attempted to obtain payment without disrupting access to SARA, a tool that was critical for Ocean Grove's operations.

73.     Status Solutions, through its counsel, sent a formal demand for payment on June 17, 2024. (Ex. 11). As set forth therein, Status Solutions directed Ocean Grove to make the full payment of $18,000 immediately, which Ocean Grove did not do.

74.     Ocean Grove has not paid the full balance due and owing to date.

**C.  Defendant Shrewsbury's Failure To Pay The Contract Price.**

75.     The Shrewsbury Innovation Agreement's Effective Date is May 18, 2023, with the Subscription Period running from March 16, 2023–March 15, 2024. (Ex. 3, at p. 1).

76.     Though Shrewsbury timely paid the $18,000 Price at the outset of the Initial Term, it subsequently failed to make any additional payments when the Innovation Agreement renewed in 2024.

77.     Shrewsbury's deadline to terminate the Innovation Agreement elapsed on January 15, 2024 (Ex. 3, at p. 1). Status Solutions did not receive a notice of nonrenewal on or before January 15, 2024, and consequently, the Shrewsbury Innovation Agreement renewed. (Ex. 3, at Section V, ¶ 3(a)).

78.     Accordingly, Status Solutions sent Shrewsbury an invoice dated February 22, 2024, requesting payment for the $18,000 contract price due. A true and accurate copy of Invoice No. INV23720 is attached hereto as **Exhibit 13**.

79.     Shrewsbury failed to remit payment before the new Subscription Period began on March 16, 2024. In an effort to work in good faith with its customer, Status Solutions did not immediately suspend Shrewsbury's access to SARA and instead, attempted to obtain payment without disrupting Shrewsbury's access to SARA, a tool that was critical for Shrewsbury's operations.

80.     In the following weeks, Status Solutions made numerous requests for Shrewsbury to pay the $18,000 balance due. Despite these repeated requests, Shrewsbury failed to make the requested payment.

81.     Status Solutions, through its counsel, sent a formal demand for payment on June 17, 2024. (Ex. 11). As set forth therein, Status Solutions directed Shrewsbury to make the full payment of $18,000 immediately, which Shrewsbury did not do.

82.     Shrewsbury has not paid the full balance due and owing to date.

**D.  Defendant Wall's Failure To Pay The Contract Price.**

83.     The Effective Date of the Wall Innovation Agreement is May 18, 2023, with the initial Subscription Period running from March 16, 2023–December 21, 2023. (Ex. 4).

84.     Wall timely paid the prorated Price at the outset of the Initial Term, and subsequently paid an additional $18,000 on January 8, 2024, when the Innovation Agreement renewed for a 12-month Subscription Period.

85.     Despite this payment history, Wall subsequently failed to make any additional payments when the Innovation Agreement renewed in December 2024.

86.     Wall's deadline to terminate the Innovation Agreement elapsed on September 21, 2024. (Ex. 4, at p. 1). Status Solutions did not receive a notice of nonrenewal on or before September 21, 2024, and consequently, the Wall Innovation Agreement renewed. (Ex. 4, p.1 and Section V, ¶ 3(a)).

87.     Accordingly, Status Solutions sent Wall an invoice dated October 9, 2024, requesting payment for the $18,000 contract price due. A true and accurate copy of Invoice No. INV 25439 is attached hereto as **Exhibit 14**.

88.     Wall failed to remit payment before the new Subscription Period began on December 22, 2024.

89.     Wall's failure to either make the renewal payment or cancel the Innovation Agreement is particularly egregious in light of the above-described events, whereby Status Solutions repeatedly demanded payment from other Complete Care Defendants and reiterated that each Defendant's Innovation Agreement would renew automatically unless canceled. Despite this notice, Wall neither canceled the Innovation Agreement nor made the $18,000 license fee renewal payment upon the automatic renewal date.

90.     Accordingly, Status Solutions, through its counsel, demanded that Wall pay the license renewal fee.

91.     Wall has not paid the full balance due and owing to date.

92.     As of the date of this filing, none of the Complete Care Defendants have paid the license fees owed to Status Solutions.

<u>**COUNT ONE – BREACH OF THE EULA**</u>
<u>**(AGAINST DEFENDANT BRICK)**</u>

93.     Status Solutions incorporates all preceding paragraphs as if fully restated herein.

94.     The Brick EULA, including the Innovation Agreement and License Agreement, is

a binding and enforceable contract between Status Solutions and Brick.

95. All conditions precedent to performance have been satisfied.

96. Brick breached the EULA in at least two ways: (a) by sharing or otherwise allowing a third party to access proprietary SARA data; and (b) by failing to pay the Price when due.

97. With respect to Brick's first breach, Paragraph 3 of the License Agreement provides:

> **You agree and acknowledge that the Software is owned by [Status Solutions]** (and/or where applicable, its suppliers), and accordingly **You have no right**, and You acknowledge that **no such right is granted hereby**, **to use**, make, sublicense, modify, **transfer**, rent, lease, sell, display, distribute **or copy originals or copies of the Software, or to permit or authorize any other party to do so**, except as may be specifically permitted by the express terms of this [License Agreement].

(Emphasis added).

98. The License Agreement thus prohibits a SARA licensee like Brick from sharing any aspect of the SARA system, including any associated data, with a third party. (*Id.*). The License Agreement also prohibits Brick from permitting or authorizing a third party to access the SARA system. (*Id.*).

99. Having signed the License Agreement, Brick was obligated to comply with the EULA's terms, including but not limited to those set forth in License Agreement Paragraph 3.

100. Despite these clear and unambiguous terms, or about April 17, 2024, Brick authorized, permitted, or otherwise allowed JNL and/or its representative(s) to export data from the SARA system.

101. On information and belief, Brick then performed, or permitted JNL representative(s) to perform, a complete export of SARA system data on or about April 17, 2024.

102. This data constitutes Confidential Information as defined at Section V, ¶ 4 of the Innovation Agreement.

103.    No provision of the EULA permitted Brick to provide this information to JNL or any other third party. On the contrary, License Agreement Paragraph 3 and Innovation Agreement Section V, Paragraph 4, among others, prohibit such conduct.

104.    Accordingly, Brick breached the EULA by, on information and belief, directly transferring, or otherwise facilitating the transfer of, SARA system data to one or more third parties.

105.    These actions caused damages to Status Solutions in an amount to be proven at trial.

106.    In addition to Brick's misuse of SARA system data in violation of the EULA, Brick has also breached the EULA by failing to pay the license renewal fee due to Status Solutions.

107.    The "Price" set forth on page 1 of the Brick Innovation Agreement is $18,000 for the Initial Term of twelve months, with an automatic annual renewal for successive one-year terms "unless either party provides the other party with written notice of nonrenewal at least 60 days before the end of the then-current term." (Ex. 1).

108.    Payment is due on the Effective Date. (Ex 1, at p. 1). In the event the Customer is late in making a payment to Status Solutions, such "[l]ate payments will be assessed a penalty of 1.5% monthly on the unpaid balance." (*Id.*, at p. 2).

109.    The Innovation Agreement's Effective Date is May 18, 2023, with the Subscription Period running from April 1, 2023–March 31, 2024. (*Id.*, at p. 1).

110.    Though Brick timely paid the $18,000 Price at the outset of the Initial Term, it subsequently failed to make any additional payments when the Innovation Agreement renewed.

111.    Status Solutions never received a notice of termination from Brick, and consequently, the Innovation Agreement renewed. Accordingly, Status Solutions sent Brick an invoice dated February 22, 2024, requesting payment for the $18,000 due. (Ex. 7).

112.     Brick failed to remit payment before the new Subscription Period began on April 1, 2024. Status Solutions did not immediately suspend Brick's access to the Software in an effort to work in good faith with its customer to obtain payment without disrupting Brick's access to a tool that was critical for its operations.

113.     In the following weeks, Status Solutions made numerous requests for Brick to pay the $18,000 balance due. Brick failed to make the requested payment, but did not convey any intent to terminate the Innovation Agreement.

114.     Ultimately, on April 12, 2024, Status Solutions sent a Notice of Cancellation for Non-Payment to Brick. (Ex. 8). Through this Notice, Status Solutions informed Brick that, "although multiple attempts have been made to remit payment on the outstanding invoice(s) owed to Status Solutions, failure to do so in a timely manner has left us with no alternative action other than to cease services." (*Id.*). Status Solutions further alerted Brick that failure to make payment within 48 hours would result in Status Solutions ceasing a variety of services listed therein. (*Id.*) Brick did not remit payment within 48 hours.

115.     On April 18, 2024, Status Solutions reiterated Brick's obligation to pay the $18,000 contract price. (Ex. 10).

116.     Brick did not make the payment due.

117.     Status Solutions, through its counsel, sent a formal demand for payment on June 17, 2024. (Ex. 11). Brick has not paid the full balance due and owing to date.

118.     In addition to the annual contract Price of $18,000, Status Solutions is also due monthly interest of 1.5% accruing in each month from April 1, 2024, to present. As of the filing of this Complaint, this represents at least an additional $2,889.73 owed, with interest continuing to accrue.

## COUNT TWO – BREACH OF THE OCEAN GROVE EULA
## (AGAINST DEFENDANT OCEAN GROVE)

119.     Status Solutions incorporates all preceding paragraphs as if fully restated herein.

120.     The Ocean Grove EULA, including the Innovation Agreement and License Agreement, is a binding and enforceable contract between Status Solutions and Ocean Grove.

121.     All conditions precedent to performance have been satisfied.

122.     Ocean Grove breached the EULA by failing to pay the Price when due.

123.     The "Price" set forth on page 1 of the Ocean Grove Innovation Agreement is $18,000 for the Initial Term of twelve months, with an automatic annual renewal for successive one-year terms "unless either party provides the other party with written notice of nonrenewal at least 60 days before the end of the then-current term." (Ex. 2).

124.     Payment is due on the Effective Date. (Ex 2, at p. 1). In the event the Customer is late in making a payment to Status Solutions, such "[l]ate payments will be assessed a penalty of 1.5% monthly on the unpaid balance." (*Id.*, at p. 2).

125.     The Innovation Agreement's Effective Date is May 18, 2023, with the Subscription Period running from June 1, 2023–May 31, 2024. (*Id.*, at p. 1).

126.     Though Ocean Grove timely paid the $18,000 Price at the outset of the Initial Term, it subsequently failed to make any additional payments when the Innovation Agreement renewed.

127.     Status Solutions never received a notice of termination from Ocean Grove, and consequently, the Innovation Agreement renewed. Accordingly, Status Solutions sent Ocean Grove an invoice dated April 6, 2024, requesting payment for the $18,000 due. (Ex. 12).

128.     Ocean Grove failed to remit payment before the new Subscription Period began on June 1, 2024. Status Solutions did not immediately suspend Ocean Grove's access to the Software

in an effort to work in good faith with its customer to obtain payment without disrupting Ocean Grove's access to a tool that was critical for its operations.

129.    Status Solutions, through its counsel, sent a formal demand for payment on June 17, 2024. (Ex. 11). Ocean Grove has not paid the full balance due and owing to date.

130.    In addition to the annual contract Price of $18,000, Status Solutions is also due monthly interest of 1.5% accruing in each month from June 1, 2024, to present. (Ex. 2, at ¶ 3(a)(i)). As of the filing of this Complaint, this represents at least an additional $2,276.87 owed, with interest continuing to accrue.

## COUNT THREE – BREACH OF THE SHREWSBURY EULA (AGAINST DEFENDANT SHREWSBURY)

131.    Status Solutions incorporates all preceding paragraphs as if fully restated herein.

132.    The Shrewsbury EULA, including the Innovation Agreement and License Agreement, is a binding and enforceable contract between Status Solutions and Shrewsbury.

133.    All conditions precedent to performance have been satisfied.

134.    Shrewsbury breached the EULA by failing to pay the Price when due.

135.    The "Price" set forth on page 1 of the Shrewsbury Innovation Agreement is $18,000 for the Initial Term of twelve months, with an automatic annual renewal for successive one-year terms "unless either party provides the other party with written notice of nonrenewal at least 60 days before the end of the then-current term."  (Ex. 3).

136.    Payment is due on the Effective Date. (Ex 3, at p. 1). In the event the Customer is late in making a payment to Status Solutions, such "[l]ate payments will be assessed a penalty of 1.5% monthly on the unpaid balance." (*Id.*, at p. 2).

137.    The Innovation Agreement's Effective Date is May 18, 2023, with the Subscription Period running from March 16, 2023–March 15, 2024. (*Id.*, at p. 1).

138.    Though Shrewsbury timely paid the $18,000 Price at the outset of the Initial Term, it subsequently failed to make any additional payments when the Innovation Agreement renewed.

139.    Status Solutions never received a notice of termination from Shrewsbury, and consequently, the Innovation Agreement renewed. (*Id.*, at p. 1 and at Section V, ¶ 3(a)).

140.    Accordingly, Status Solutions sent Shrewsbury an invoice dated January 29, 2024, requesting payment for the $18,000 due. (Ex. 13).

141.    Shrewsbury failed to remit payment before the new Subscription Period began on March 16, 2024. Status Solutions did not immediately suspend Shrewsbury's access to the Software in an effort to work in good faith with its customer to obtain payment without disrupting Shrewsbury's access to a tool that was critical for its operations.

142.    Status Solutions, through its counsel, sent a formal demand for payment on June 17, 2024. (Ex. 11). Shrewsbury has not paid the full balance due and owing to date.

143.    In addition to the annual contract Price of $18,000, Status Solutions is also due monthly interest of 1.5% accruing in each month from March 16, 2024, to present. (Ex. 3, at ¶ 3(a)(i)). As of the filing of this Complaint, this represents at least an additional $3,203.08 owed, with interest continuing to accrue.

## COUNT FOUR – BREACH OF THE WALL EULA
### (AGAINST DEFENDANT WALL)

144.    Status Solutions incorporates all preceding paragraphs as if fully restated herein.

145.    The Wall EULA, including the Innovation Agreement and License Agreement, is a binding and enforceable contract between Status Solutions and Wall.

146.    All conditions precedent to performance have been satisfied.

147.    Wall breached the EULA by failing to pay the Price when due.

Case: 2:25-cv-00144-ALM-CMV Doc #: 1 Filed: 02/13/25 Page: 23 of 27 PAGEID #: 23

148.   Wall timely paid the prorated Price at the outset of the Initial Term, and subsequently paid an additional $18,000 on January 8, 2024, when the Innovation Agreement renewed for a 12-month Subscription Period.

149.   Despite this payment history, Wall subsequently failed to make any additional payments when the Innovation Agreement renewed in December 2024.

150.   The Wall Innovation Agreement renews automatically for successive one-year terms "unless either party provides the other party with written notice of nonrenewal at least 60 days before the end of the then-current term." (Ex. 4, at p. 1).

151.   Payment is due on the Effective Date. (Ex 3, at p. 1). In the event the Customer is late in making a payment to Status Solutions, such "[l]ate payments will be assessed a penalty of 1.5% monthly on the unpaid balance." (*Id.*, at p. 2).

152.   Wall's deadline to terminate the Innovation Agreement elapsed on September 21, 2024. (Ex. 4, at p. 1). Status Solutions did not receive a notice of nonrenewal on or before September 21, 2024, and consequently, the Wall Innovation Agreement renewed. (Ex. 4, at p. 1 and at Section V, ¶ 3(a)).

153.   Accordingly, Status Solutions sent Wall an invoice dated October 9, 2024, requesting payment for the $18,000 contract price due. (Ex. 14).

154.   Wall failed to remit payment before the new Subscription Period began on December 22, 2024.

155.   Wall's failure to either make the renewal payment or cancel the Innovation Agreement is particularly egregious in light of the above-described events, whereby Status Solutions repeatedly demanded payment from other Complete Care Defendants and reiterated that the Innovation Agreement would renew automatically unless canceled. Despite this notice, Wall

neither canceled the Innovation Agreement nor made the $18,000 license fee renewal payment upon the automatic renewal date.

156.    In addition to the annual contract Price of $18,000, Status Solutions is also due monthly interest of 1.5% accruing in each month from December 22, 2024, to present. (Ex. 4, at p. 1 and at ¶ 3(a)(i)). As of the filing of this Complaint, this represents at least an additional $270.00 owed, with interest continuing to accrue.

157.    As of the date of this filing, neither Wall, nor any of the other Complete Care Defendants have paid the renewal fees due under their respective EULAs.

## COUNT FIVE – TORTIOUS INTERFERENCE WITH CONTRACT (AGAINST JNL)

158.    Status Solutions incorporates all preceding paragraphs as if fully restated herein.

159.    The EULA between Status Solutions and Complete Care is a binding and enforceable contract.

160.    Among its provisions, Paragraph 3 of the License Agreements provides:

> **You agree and acknowledge that the Software is owned by [Status Solutions]** (and/or where applicable, its suppliers), and accordingly **You have no right**, and You acknowledge that **no such right is granted hereby**, **to use**, make, sublicense, modify, **transfer**, rent, lease, sell, display, distribute **or copy originals or copies of the Software, or to permit or authorize any other party to do so**, except as may be specifically permitted by the express terms of this EULA.

(Ex. 5) (emphasis added).

161.    The 2024 version of the License Agreement includes further restrictions on, *inter alia*, the use, transfer, modification, or provision of unauthorized access to the Software. (Ex. 6, at ¶ 3).

162.    Thus, at all times relevant, the Complete Care Defendants were bound by License Agreement terms prohibiting a Software licensee from sharing the Software, including any associated data, with a third party. (Exs. 5–6).

163. The License Agreement also prohibits a licensee from permitting or authorizing a third party to access the Software. (*Id.*).

164. Having signed the License Agreement, the Complete Care Defendants were obligated to comply with its terms, including but not limited to the restrictions set forth in Paragraph 3.

165. On information and belief, as a former reseller of Status Solutions' software, and as the seller of a competing product, JNL knew or should have known that the Complete Care Defendants had access to the SARA system subject to a license agreement with Status Solutions.

166. On information and belief, JNL employs in a sales role at least one former Status Solutions employee, further evidencing that JNL knew or should have known that the Defendants' access to the SARA system is subject to a license agreement with Status Solutions.

167. On information and belief, JNL intentionally interfered with the contractual relationship between one or more of the Complete Care Defendants and Status Solutions, without privilege or justification, by, *inter alia*:

    a. Obtaining access to the Software; and

    b. Exporting confidential and proprietary Software information for JNL's own use.

168. JNL knew or could reasonably have been expected to know that its actions were substantially certain to cause a breach of the EULA, which did, in fact, occur.

169. Indeed, one or more of the Complete Care Defendants breached the EULA, on information and belief, as a direct result of JNL's actions.

170. Status Solutions has been damaged by JNL's tortious interference in an amount to be proven at trial.

## COUNT SIX – UNJUST ENRICHMENT
### (AGAINST JNL)

171.    Status Solutions incorporates all preceding paragraphs as if fully restated herein.

172.    By its actions alleged herein, JNL has been unjustly enriched at the expense of Status Solutions.

173.    JNL received the benefit of Status Solutions' confidential information, and on information and belief, received additional financial benefits, all derived from Status Solutions' work and without Status Solutions' permission.

174.    JNL knew it received these benefits – for example, JNL's representative who identified himself as "Eric" confirmed on or about April 17, 2024, that he was able to obtain confidential information from the Brick SARA system.

175.    Under the circumstances, it would be unjust for JNL to retain Status Solutions' confidential information and any economic benefit derived directly or indirectly therefrom.

176.    As a direct and proximate result of JNL's unjust enrichment, Status Solutions is entitled to damages in an amount to be proven at trial.

177.    All conditions precedent to the bringing of this action have been performed, have occurred, or have been waived.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment in its favor on all Counts and prays for an award of damages against Defendants, including but not limited to, the following relief:

      a.    Compensatory damages equal to the amount due and owing under the EULA, including interest accruing through the date of a final judgment in this matter;

      b.    Additional compensatory damages resulting from the Complete Care Defendants' breach of Status Solutions' confidentiality rights under the EULA and JNL's tortious interference resulting in this breach(es);

      c.    Punitive damages;

d.  Attorneys' fees and costs as provided in Innovation Agreement Section V, Paragraph 3(a), and as otherwise allowable by law;

e.  Prejudgment interest at the maximum legal rate; and

f.  Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ Aneca E. Lasley*
Aneca E. Lasley (0072366), *Trial Attorney*
Lydia F. Reback (0097766)
ICE MILLER LLP
250 West Street, Suite 700
Columbus, Ohio 43215
P: (614) 462-2254
F: (614) 222-3435
Aneca.Lasley@icemiller.com
Lydia.Reback@icemiller.com

*Counsel for Plaintiff Status Solutions, LLC*